LONSDALE COMPANY *et al. vs.* CITY OF PROVIDENCE *et al.*

JUNE 16, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. These are constitutional questions certified by the superior court under general laws 1923, chapter 348, section 1. The proceeding is based on a bill in equity brought by the complainants, as alleged owners of certain rights in the waters of the Pawtuxet river, to enjoin the city of Providence and its representatives from wrongfully diverting water from that river, under the purported authority given by public laws 1931, chap. 1815, P. L. 1932, chap. 1966, and P. L. 1936, chap. 2316.

The bill of complaint is very lengthy and, briefly summarized, alleges that the complainants, Lonsdale Company and Interlaken Mills, are the owners in fee of certain mills and mill privileges located on the north branch of the Pawtuxet river, below the reservoir and the Kent Dam in Scituate; that prior to the passage of chap. 1278, P. L. 1915, the owners of the Hope and Phenix Mills, now owned by Lonsdale Company, and of the Harris Mill and Finishing Plant at Arkwright, then and now owned by Interlaken Mills, possessed natural rights and privileges in the flowage of the waters of the Pawtuxet river; that the respondent city, by virtue of P. L. 1915, chap. 1278, condemned certain areas in and near Scituate to establish a reservoir for a water supply to Providence and other territories as therein set forth; that the city was thereby authorized to condemn only part of the complainants' water rights and was limited to certain quantities of water that it might divert from lower riparian

owners, as more particularly set forth in sec. 6 of chap. 1278; and that, by virtue of the provisions of that statute, the then owners brought actions in the superior court for assessment of the damages sustained by them as a result of the condemnation.

The bill of complaint further alleges that, as part of the settlements of those pending actions, the city and owners on September 1, 1922 entered into a contract which "effected certain modifications of the rights and interest" acquired by the city through condemnation; that this contract was ratified by the general assembly (P. L. 1925, chap. 696) and thereafter the Hope Company conveyed its property to Lonsdale Company; that the city established the Scituate Reservoir and built the Kent Dam across the river, thus impounding the waters above the dam; that the respondents, by virtue of the authority granted by P. L. 1931, chap. 1815, P. L. 1932, chap. 1966 and P. L. 1936, chap. 2316, all of which were passed in amendment of sec. 18 of chap. 1278, P. L. 1915, have diverted, and propose to further divert, water in excess of the rights originally condemned and in violation of the rights reserved in the contract which entered into the settlement of the owners' actions for damages; and that this diversion has been, and will be, effected in order to supply territories outside of the area authorized by chap. 1278; that chapters 1815, 1966 and 2316 are unconstitutional and void, in that each of them conflicts with the provisions of secs. 12 and 16 of art. I of the constitution of Rhode Island, and sec. 10, art. I of the constitution of the United States and section 1 of art. XIV of the amendments thereto. For these reasons the complainants pray that the respondents be enjoined from the wrongful diversion of these waters and that an accounting for damages be granted.

The questions whether these three public laws are repugnant to the specified provisions of the constitutions of the state and of the United States, were properly brought in

question on the record by the direct allegations of their unconstitutionality contained in subdivisions 12 and 13 of the bill of complaint. Thereafter this state of the record was called to the attention of the court by motion of the respondents to certify the constitutional questions. The questions were then certified forthwith, under the provisions of section 1, chap. 348, for hearing and determination by us.

At the first hearing before us, it became apparent from the argument of the respondents and their answer to the complainants' reply brief, which was filed on that date, that there might be in the cause other material issues of law or fact, or both, which might be controlling and thus avoid the necessity of passing upon the constitutional questions at this time. Since neither party had briefed this point, the hearing was continued, at the request of the complainants, to permit further argument and the filing of additional briefs. Additional briefs were later filed by both parties and further arguments were heard, being directed more particularly to whether determination at this time of the certified constitutional questions would be premature.

The complainants contend generally that the questions were certified properly under the statute, in accordance with the general rule and pertinent procedure as set forth in *Blais* v. *Franklin,* 30 R. I. 413; that the constitutionality of chapters 1815, 1966 and 2316 of the public laws, as specified in the 12th and 13th subdivisions of the bill of complaint, is germane and indispensable to the determination of the issues involved; and that, even if the constitutionality of these statutes is separable, at this time, from the question of the construction of chap. 1278, or other issues, we should pass on the questions as was done by the court in *State* v. *Conragan,* 54 R. I. 256.

The respondents, however, now insist by their brief and argument that the ultimate determination of this bill of complaint necessarily involves the interpretation of chap.

1278, P. L. 1915, the original enabling act, and other issues of law and fact involving not only that chapter, but also the condemnation statement filed by the city, and the contract of September 1, 1922 which was entered as part of the condemnation settlements and which is binding admittedly on the complainants. The respondents also insist that, under the original enabling statute, the taking of water rights by the city of Providence was not partial but was entire, thus leaving the complainants with no rights to be invaded or injured, other than those under the contract, and thereby no right to question the constitutionality of the later public laws purporting to be passed in amendment of chap. 1278.

We are of the opinion that the determination at this time of the certified constitutional questions, involving chapters 1815, 1966 and 2316, would be premature. It is evident from the bill, answer and the arguments before us that the parties present conflicting contentions on other disputed issues of law and fact, in relation to chap. 1278, the condemnation proceedings, and the contract in settlement of pending suits, any one of which issues might reasonably determine the cause without necessitating the determination of the constitutional questions as raised.

For general purposes, the complainants concede that the crux of their cause is in the allegation that, under chap. 1278 and the condemnation statement and contract of settlement, *only a partial taking* of their riparian rights was intended and accomplished; and that the proposed takings under the later chapters 1815, 1966 and 2316 to serve areas allegedly outside the limits of the original act, constitute takings, without compensation, of additional water rights belonging and reserved to complainants as owners of the riparian rights.

The complainants concede that chap. 1278, the original amending act, is constitutional; and they do not deny the respondents' contention that the actual taking by the city of water rights under that chapter was in conformity and

coextensive with the authority therein provided. Therefore, they concede, at least by clear implication, that their bill should be dismissed, if the court, as the respondents contend, should interpret that chapter as authorizing an *entire* taking by the city of the complainants' water rights, with certain express limitations not in dispute, rather than a *partial* or limited taking thereof, as contended by the complainants. There is thus presented a legal issue which may be controlling and which involves the correct construction of an admittedly valid statute, which is quite different from the chapters, the constitutionality of which is challenged by the complainants' bill. Therefore, until chap. 1278 is first construed, it cannot be said that the constitutional questions relating to chapters 1815, 1966 and 2316 are germane and *indispensably* necessary to the determination of this cause.

Moreover, the parties are not in agreement upon the actual location of the boundary lines of the area authorized to be condemned in sec. 6, or the "drainage district" stated in sec. 18, of chap. 1278. If the condemned area, or "the drainage district of said north branch of said Pawtuxet River", thus referred to, is located so as to include, in fact or in legal effect, the areas to be supplied as specifically mentioned in the amending chapters, 1815, 1966 and 2316, the complainants' cause would also be determined without the necessity of passing on the certified questions. Further, before the constitutional questions would be necessarily reached, there may be a question, requiring the proper construction and application of chap. 1278, as to whether or not the legislature intended by this statute, and particularly sec. 18, that the whole of any town could be supplied if any part of it was within "the drainage district."

Again, the parties disagree upon the interpretation and legal effect of important language in the contract entered into by the city and riparian owners as part of the settle-

ments of pending suits for damages resulting from the condemnation under chap. 1278. The complainants do not deny that this contract could be more clearly stated to express their claims; but they contend it should be construed as reserving to them, as owners of the riparian rights and in addition to flowage guaranteed in the contract, *all* rights to flowage and water *in excess* of that needed to supply areas expressly defined in chap. 1278. The respondents argue that under chap. 1278 the city condemned, and paid many hundreds of thousands of dollars for, *all* of the water and water rights of the riparian owners, excepting only those requirements expressly scheduled and guaranteed to the complainants in the contract. Thus a further issue on the interpretation and legal effect of the contract, considered alone and also in the light of chap. 1278, may determine the whole cause without the necessity of passing on the constitutionality of chapters 1815, 1966 and 2316.

The respondents further argue that, even if chap. 1278 and the condemnation statement and this contract be construed as the complainants contend, nevertheless complainants will be unable to prove that any loss or damage has resulted or will result to them from the respondents' past or proposed conduct under and in accordance with the above-described amendatory chapters of the public laws. This might present a further issue of fact and, if found as the city contends, a serious question would be raised whether the complainants would be entitled to raise the constitutional questions, because they would be unable to show that their rights were injuriously affected so as to justify any of the relief prayed for.

There may well be other issues of law or fact which are presented by chap. 1278, the statement of condemnation and the contract above mentioned and upon which this suit may be determined without passing upon the constitutional questions involved. However, we think we have suggested

enough to make it plain that the determination at this time of the constitutionality of chaps. 1815, 1966 and 2316, as certified, is not indispensably necessary to the determination of the complainants' cause, as set forth in their bill of complaint.

Ordinarily this court has consistently followed the accepted general rule that it will not pass upon the constitutionality of an act of the legislature unless its determination is indispensably necessary to the determination of the cause. *Newell* v. *Franklin,* 30 R. I. 258, 265; *Blais* v. *Franklin, supra; Wells* v. *Perry,* 50 R. I. 427, 428; *The First National Stores, Inc.* v. *Lewis,* 51 R. I. 448; *State* v. *Goldberg,* 61 R. I. 461.

In *State* v. *Goldberg, supra,* the most recent case, this court considered that the questions of constitutionality were premature because a construction of the pertinent and underlying enabling statute might very well make unnecessary any determination of the constitutional question relating to certain ordinances or regulations passed by virtue of alleged authority under the enabling statute.

In that case this court reaffirmed the general rule, above stated, when it held: "We are not bound to pass upon the constitutionality of an act of the legislature merely because such a question has been certified to us in accordance with the mere letter of the statute. We must and will decide a constitutional question so raised when, upon hearing, it is clear to this court that the case cannot be decided on any other point, or that the determination of the certified question is indispensably necessary for a disposition of the case."

In the instant cause, we have not only a question of the construction of chap. 1278, the original enabling act, but also questions of law and fact relating to the statement of condemnation and the contract in the settlement of pending suits, any one of which issues may determine the cause be-

fore the constitutionality of the later statutes becomes germane and indispensably necessary.

The complainants, however, urge that, even if the constitutional questions are separable from the other material questions of law, and notwithstanding the rule, we should adopt the course followed in *State* v. *Conragan, supra.* It is true that, in that case, the court did pass on a certified constitutional question, notwithstanding the existence of other controlling issues in the case. However, the opinion clearly recognized the rule and made it plain that the court was making an exception of that case. Apparently the fact that the same case had been before the court previously and that the issues were simple, moved the court to finally decide the whole case, under an exercise of its broad powers, and bring an end to what otherwise would have resulted in a series of other like cases.

In the instant cause no such parallel appears. The issues involve facts as well as law and are strongly disputed; the pleadings may not have been completed, and no evidence is before us to determine any factual questions or to assist possibly in the interpretations of law relating to the "drainage district" in chap. 1278, or the statement of condemnation, and the contract. In all these circumstances, we do not think it proper to make an exception to the well-established rule and to pass upon the certified constitutional questions at this time, much as it might be desired by one or both parties.

The complainants have relied much on *Blais* v. *Franklin, supra,* but there the constitutionality of the statute was the entire basis of the case and there was no other determinative issue. Nor is the instant cause like any of the other cases cited by the complainants, which show that the only controlling issue was based immediately upon a statute and therefore required determination of the constitutionality of that statute, which had to be first construed by the court.

Examples of these are found in *Prata Undertaking Co.* v. *Board of Embalming,* 55 R. I. 454; *State* v. *Smith,* 56 R. I. 168; *Tisdall* v. *Board of Aldermen,* 57 R. I. 96.

For all of these reasons, we are of the opinion that the determination of the constitutional questions as certified is not at this time germane and indispensably necessary to a determination of the cause alleged in the bill of complaint.

The papers in the cause, with our decision certified thereon, are ordered to be sent back to the superior court for further proceedings.

*Greenough, Lyman & Cross,* for Lonsdale Company.

*Hinckley, Allen, Tillinghast & Wheeler,* for Interlaken Mills.

*Richard E. Lyman, Frank L. Hinckley, Harry P. Cross, Harold A. Andrews, Noel M. Field, T. Dexter Clarke,* of counsel.

*Daniel E. Geary,* City Solicitor, *John T. Walsh, Francis D. McManus,* Assistant City Solicitors, for respondents.